GREG G. GUIDRY, Judge.
| ¡/The landowners of 153 acres of wetlands [1] appeal a judgment in a suit for damages following the expropriation of the property by the State of Louisiana, Department of Transportation and Development (DOTD). We vacate the judgment and remand for a new trial.
The DOTD expropriated the land in 1987 for the construction of the 1-310 interchange.[2] DOTD deposited $45,386 in the Court registry as just compensation.[3] The landowners answered, demanding additional compensation, severance and property damages.
IsThe case was tried by a jury in March of 2006.[4] The jury returned a verdict awarding the landowners $91,672 ($600 per acre) for the land expropriated, but nothing for property or severance damages.
In April of 2006, the landowners filed a motion for Judgment Notwithstanding the *800 Verdict (JNOV), or for New Trial. A hearing was held in June of 2006. In the hearing, three jurors testified about the conduct of the jurors during the trial. The trial judge subsequently denied both motions.
On appeal, the landowners first assert that the trial judge erred in denying the JNOV or New Trial where the jury prematurely deliberated the case before closing argument in the presence of the alternate juror, and where the jury expressed in a written question to the trial judge its belief that DOTD should pay the costs of repairing the weirs it installed as mitigation,[5] yet failed to award any damages for the repair or replacement of the weirs. The landowners further assert that the jury was presented with inadmissible evidence of a hold harmless agreement, including a highly prejudicial reference by DOTD to an inapplicable provision. Third, the landowners contend that the trial judge erred in failing to award expert costs for the landowners’ experts, Coastal Environments, Inc., George Castille, and Hans Van Beek.
The landowners assert three instances of juror misconduct. They assert first that two of the jurors misled counsel in voir dire when they failed to acknowledge previous experiences with the court system. Secondly, they assert that the jury improperly deliberated the case prior to closing arguments while viewing demonstrative evidence that would not later be allowed in the jury room |4during deliberations, and that the pre-closing discussion improperly included the alternate juror. Third, the landowners assert that the jury was improperly prejudiced by outside information, including other jurors’ statements that the property’s degradation was caused by sources other than the actions of the DOTD.
The day before the trial ended and before closing arguments, the six jurors and the alternate were permitted to view the documentary evidence (maps, etc.) in a separate room. The bailiff was not present. The landowners contend that, despite instructions by the judge to refrain from talking about the case, or forming any opinions before being released to deliberate, the jurors not only discussed the case, but also expressed opinions regarding damages. The landowners further assert that it was improper for the bailiff to leave the jury alone while the jury viewed the maps. This error is based on statements made by the foreman, Russell Prima, to William Monteleone, Jr., and counsel, Randall Smith, one month after the trial.
Mr. Monteleone set up a meeting with Mr. Prima, the jury foreman, after the trial, but prior to the hearing on the new trial motion. According to Mr. Montel-eone, Mr. Prima told him the jury reviewed the exhibits, and interpreted the evidence that had been introduced. He said they noted whether the photographs showed water in the marsh, or whether it was dry. He asserted that the jurors discussed the amount of land loss, compared the documents, discussed what impact was occurring, and determined at that time that the loss resulted from natural causes, not saltwater intrusion. Mr. Monteleone also claimed that Mr. Prima, who worked for Shell Oil at one time, said he talked to another juror about how oil pollution affects the trees.
| BPuring the hearing for the new trial, Mr. Prima testified that the jurors examined the maps and compared them. He admitted they spoke of some things, but denied they talked about the case or formed premature opinions.
*801 The landowners also contend that they were prejudiced when two jurors gave misleading answers during voir dire, preventing counsel from examining them about the prejudicial effect their prior litigation experience might have on their objectivity.
In answer to the question of whether anyone had served on a jury before, Theresa McDonald said she had been on a jury in a criminal case. She denied that she had been in a lawsuit. In the hearing on the New Trial motion, Ms. McDonald admitted she had been involved in an insurance suit for a house fire, and in a repossession action. Ms. McDonald thought the question in voir dire meant whether she was involved as a juror.
Thomas Roche, the alternate juror, denied being involved in other court proceedings, but at the new trial hearing admitted he had litigated a car accident suit, been a defendant in a promissory suit action, and filed a suit for marital separation. He said he had forgotten most of the details of those events, although he did remember his divorce battle.
The landowners also allege they were prejudiced when the DOTD counsel made improper references to a hold harmless agreement that the trial judge had previously ruled inadmissible.
Peremptory grounds for granting a new trial in a civil action exist if it is shown that “the jury was bribed or behaved improperly so that impartial justice has not been done.” La.C.C.P. article 1972(3). The trial court is granted wide discretion in deciding whether a new trial should be granted where allegations of | (jury misconduct are made. La.C.C.P. article 1973; Wright v. Hirsch, 560 So.2d 835, 836 (La.1990). Improper behavior by a juror or jury is not defined and must be determined by the facts and circumstances of each particular case. Karagiannopoulos v. State Farm Fire & Cas. Co., 94-1048, p. 12 (La.App. 5 Cir. 11/10/99), 752 So .2d 202, writ denied, 99-2866 (La.12/10/99), 752 So.2d 165, reconsideration denied, 99-2866 (La.2/11/00), 754 So.2d 926, writ denied, 99-3474 (La.2/11/00), 754 So.2d 940; Uriegas v. Gainsco, 94-1400, p. 13 (La.App. 3 Cir. 9/13/95), 663 So.2d 162, 170, writ denied, 95-2485 (La.12/15/95), 664 So.2d 458.
The party alleging jury misconduct must prove that the level of behavior was of such a grievous nature as to preclude the impartial administration of justice. Uriegas, at p. 14, 663 So.2d at 170; Perkins v. Allstate Ins. Co., 05-2676, p. 7 (La.App. 1 Cir. 11/3/06), 950 So.2d 850, 854. The applicable standard of review in such matter is whether the trial court abused its discretion. Lawson v. Mitsubishi Motor Sales of America, 05-0257, p. 29 (La.9/6/06), 938 So.2d 35, 55.
After reviewing the testimony, we find that landowners’ allegation of prejudice is supported by the evidence. Considering the foreman’s testimony and Mr. Monteleone’s statement, we conclude that the jury acted improperly by discussing the case, and expressing opinions on the damages, prior to its deliberations. These jurors should not have been left unsupervised and the presence and participation of the alternate juror aggravates the situation. Furthermore, such misconduct is of such a “grievous nature as to preclude the impartial administration of justice.” See: Uriegas, at p. 14, 663 So.2d at 170. Thus, we find the trial judge abused his discretion in denying the motion for new trial.[6]
*802 When an appellate court finds legal error in a judgment and the record is complete, it usually conducts an independent review and judgment is rendered on j7the merits. But, when the weight of the evidence is so nearly equal that a firsthand view of witnesses is essential to a fair resolution of the issues, the appellate court must decide whether it can fairly find a preponderance of the evidence from the cold record. In cases where a view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial. Jones v. Black, 95-2530 (La.6/28/96), 676 So.2d 1067; Certified Capital Corp. v. Reis, 2003-2525, pp. 4-5 (La.App. 1 Cir. 10/29/04), 897 So.2d 128, 131, writ denied, 2004-2876 (La.1/28/05), 893 So.2d 79; Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707, 708 (La.1980); Gonzales v. Xerox Corp., 254 La. 182, 320 So.2d 163, 165 (1975).
The liability evidence in this case was presented primarily by expert testimony. Several witnesses testified to reasons unrelated to the construction of the highway for the land erosion problem, and the death of the cypress trees. The Plaintiff produced witnesses that conclude the opposite.
The issue of damages to wetlands is complex. The determination involves the sciences of geology, wetlands biology, wetlands restoration and management. In addition, our review of the evidence indicates that the weight of the expert evidence here is so nearly equal, that a firsthand view of witnesses is essential to a fair resolution of the issues. Therefore, a remand for a new trial is warranted. See: Jones, 95-2530, 676 So.2d at 1067.
Accordingly, the judgment of the trial court is hereby vacated. The case is remanded for a new trial. Each party is to pay their own costs for the appeal.

JUDGMENT VACATED; CASE REMANDED FOR NEW TRIAL.

. The landowners are: William A. Montel-eone, Ruth A. Leman Monteleone, David Gib-bens Monteleone Trust, Anne Hathaway Mon-teleone Trust, Frank Caffery Monteleone Trust, Christina Carol Monteleone Trust, The J. Edgar Monroe Foundation, Michael W. Burgess, William A. Monteleone, Jr., Dr. George E. Burgess, III, George Burgess, Jr. Trust No. 2, and George Burgess, Jr., Trust No. 4 (collectively referred to as the landowners).

. See: La.R.S. 48:441 et seq.

. The 153 acres is part of a larger parcel of land, comprising over 14,000 acres.

. The landowners asserted that the DOTD owed $222,332 for additional compensation for the land taken, and over $5,000,000 for damages to the remainder of the property.

. A weir is a construction designed to prevent salt water from infiltrating the marsh.

. In light of our finding, we pretermit the issues involving the hold harmless agreement or expert costs.